O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON SMITH, an individual, | ) | Case No. CV 12-06388 DDP (RZx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART PLAINTIFF'S** |
| v. | ) | **MOTION FOR SUMMARY JUDGEMENT AND** |
| | ) | **GRANTING IN PART AND DENYING IN** |
| HAROLD POWDRILL, ZELMA | ) | **PART DEFENDANTS' MOTION FOR** |
| POWDRILL, individuals, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | [Dkt Nos. 29, 30] |
| _____ | ) | |

Before the court are cross motions for summary judgment brought by Plaintiff Sharon Smith and Defendants Harold Powdrill and Zelma Powdrill. Having considered the parties' submissions and heard oral argument, the court adopts the following order.

**I.  Background**

Plaintiff is the former tenant of a rental unit owned and operated by Defendants. Plaintiff's claims center on Defendants' allegedly unlawful threat to evict her after Plaintiff requested that she be permitted to live with a companion dog as an accommodation to her mental disabilities.

Defendants own an 8-unit residential property located at 4205 Degnan Boulevard in Los Angeles, California (the "subject property"). Defendants reside in Texas. Defendants' children, Valerie and Phillip Powdrill, assist them in operating the property.

Plaintiff suffers from various mental disabilities, with symptoms that include depression, frequent bouts of crying, and anxiety. Her psychiatrist, Dr. David L. Friedman, diagnosed her as "temporarily totally disabled" and suffering from adjustment disorder, pain disorder, and insomnia. (Declaration of Sharon Smith in Support of Motion, Ex. A. (Dr. Friedman Letter); Declaration of Dr. David Friedman in Support of Reply to Defendant's Opposition.) Plaintiff asserts that her mental disabilities inhibit her ability to take care of herself, get out of bed, interact with others, and remain focused. (Smith Decl. ¶ 5.) Plaintiff, a former clerk typist, also suffers from injuries in both wrists for which she has received surgery but not fully recovered. (Id. ¶ 2.)

For several years, Plaintiff has lived with a companion dog, Layla, a ten-pound terrier, which she asserts helps to alleviate the symptoms of her mental disabilities. She states that the dog "helps me keep a regular routine of caring for myself, motivates me to get out of bed, clean, maintain relationships with friends and family, and to exercise." (Smith Decl. ¶ 6.)

In late June 2012, after working with Philip Powdrill to clean the apartment, Plaintiff moved into the subject property before seeing, signing, or reviewing a lease agreement with Defendants. (Id. ¶ 11; Deposition of Phillip Powdrill at 39:18-25, 40:1-4.) Around the time Plaintiff began moving into the property, she

1  informed Philip Powdrill that she would live with a dog, which she

2  stated was a companion animal necessary to address her

3  disabilities.[1] Philip Powdrill subsequently acknowledged the

4  presence of the dog at the home in a text message, inquiring about

5  how it was doing in its new home. (Smith Decl., Ex. B.)

6       On or about June 30, 2012, Valerie Powdrill provided Plaintiff

7  with a copy of the a rental agreement to review and sign. The

8  agreement contained a "no pets" clause, which states: "No dog, cat,

9  bird, or other domestic pet or animal of any kind may be kept on or

10  about the premises without LANDLORD's written consent." (Smith

11  Decl., Ex. G at 5.) Plaintiff signed the lease, but did not initial

12  the page with the no-pet provision. (Id.)

13       Uncomfortable with representations by Philip Powdrill that she

14  could keep the dog so long as she kept it on the "down low," (Smith

15  Decl., Ex. C-F), on or about July 12, 2012 Plaintiff sent a

16  handwritten letter to Defendants requesting an exception to the no-

17  pet policy. (Smith Decl., Ex. H.) In the letter, Plaintiff

18  introduced herself as a new tenant and stated that she has

19  undergone surgery to both her hands due to workplace injuries,

20  receives disability benefits, and is currently attending physical

21  and mental therapy. (Id.) Plaintiff stated that she was unaware of

22  the no-pet policy when she moved in and requested an accommodation

23  to allow her to keep the dog because it had been deemed a necessary

24  form of emotional support by her doctor. (Id.) She described the

25

26  _____

27       [1] There is some dispute as to what Plaintiff told Phillip
   Powdrill, but Defendants have indicated they accept Plaintiff's
28  version of events for the purposes of its summary judgment motion.
   (Dfdts.' MSJ at 1, fn 1.)

1  dog as "well trained, doesn't bark, [and] completely house
2  broken." (<u>Id.</u>)

3      Plaintiff attached a letter from her psychiatrist, Dr.
4  Friedman, which contains the following text:

5      Please be advised that I have been treating Ms. Smith since
6      April 2012.  As part of her psychiatric difficulty she suffers
7      from a severe Adjustment Disorder, Pain Disorder, and
8      Insomnia.  Due to Ms. Smith's psychiatric condition, having a
9      companion animal would be of much benefit to her mental state
10     and necessary for her continued stabilization.  I believe, Ms.
11     Smith should be allowed to have such a animal at her place of
12     residence.  Should you have any questions please do not
13     hesitate to contact this office.

14 (Smith Decl., Ex. H.)

15     On July 16, 2012, Defendant Zelma Powdrill replied to
16 Plaintiff's letter, denying the request for an accommodation.
17 (Smith Decl., Ex. I.) The reply letter first asserts that Plaintiff
18 has given differing explanations as to who owns the dog and whether
19 it would be living with her. (<u>Id.</u>) It then states: "Your letter
20 dated July 12, 2012, asking us to allow you and the dog to stay,
21 indicates you are in possession of a dog in the apartment. (<u>Id.</u>)
22 Our lease clearly states no pets are allowed, therefore we have
23 enclosed a NOTICE TO PERFORM CONDITIONS AND COVENANTS OR QUIT."
24 (<u>Id.</u>) Defendants attached said notice, which states that Plaintiff
25 has three days to comply with the lease covenants or quit the
26 premises. (<u>Id.</u>)

27     On July 24, 2012, Gabriela Garcia, a former Case Analyst at
28 the Housing Rights Center (HRC), called and spoke with Defendant

Zelma Powdrill. During this conversation, Ms. Garcia stated that Plaintiff is a person with mental disabilities and requires the use of a companion animal to alleviate the symptoms of her disabilities. (Deposition of Zelma Powdrill at 56:6-24; Declaration of Gabriela Garcia ¶ 4.) Defendant Zelma Powdrill stated that she received Plaintiff's July 12, 2012 letter and the letter from Dr. Friedman. Ms. Powdrill stated that she will not allow Plaintiff to keep the companion dog in the unit, asserting that allowing her to do so would result in extra costs to renovate the apartment, that dogs are meant to be kept outside, and that she wanted Plaintiff out of the unit. (Zelma Powdrill Dep. at 56:6-24.) Ms. Garcia subsequently sent a letter to Defendant Zelma Powell memorializing the conversation and confirming Defendants' refusal to grant Plaintiff's requested accommodation. (Declaration of Judith Vasan, Ex. H.)

On the following day, July 25, 2012, Plaintiff filed the instant lawsuit.

On or around February 7, 2013, Plaintiff notified Defendant of her intent to vacate the apartment by March 7, 2013.  Plaintiff vacated the property on that date. (Smith Decl. ¶ 25-26.)

Plaintiff asserts that Defendants' actions caused her emotional distress, including stress, heightened depression, increased anxiety, fear of retaliation and eviction, and humiliation. (Smith Decl. ¶ 27.)

Plaintiff asserts claims under (1) the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 et seq.; (2) the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955 et seq.; (3) the California Disabled Persons Act ("DPA"), Cal.

Civil Code §§ 54–55.2; (4) the Unruh Civil Rights Act ("Unruh Act"), Cal. Civil Code §§ 51–52,, and (5) Negligence. Plaintiff and Defendants have filed cross motions for summary judgment as to liability with respect to each of these claims.

## II. Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." _Celotex_, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." _Anderson_, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III.  Discussion**

**A.  Claims under Fair Housing Amendments Act (FHAA)**

Plaintiff alleges that Defendants are liable under three provisions of the FHAA: (1) refusing to make a reasonable accommodation because of a disability in violation of 42 U.S.C. 3604(f)(3)(B); (2) otherwise making a dwelling unavailable to a renter because of a disability in violation of 42 U.S.C. § 3604(f)(1)(A); and interfering with a person in the exercise or enjoyment of rights guaranteed by the Fair Housing Act in violation of 42 U.S.C. § 3617. Each theory of liability is considered below.

**1. Defendants Denied Plaintiff a Reasonable Accommodation**

We begin with Plaintiff's assertion that Defendants' conduct constituted a refusal to make a reasonable accommodation under the FHAA.

The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of [that person]. 42 U.S.C. § 3604 (f)(2)(a). The FHAA's definition of prohibited discrimination encompasses "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C § 3604(f)(3)(b).

To state a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) she suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. Giebeler v. M & B Associates, 343 F.3d 1143, 1147 (9th Cir. 2003) (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)). We consider each element in turn.

**(a) Plaintiff suffers from a disability**

The uncontroverted facts show that Plaintiff suffers from a disability. Under the FHAA, "handicap" means (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an

impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h)(1)-(3).[2]

The Department of Justice (DOJ) and the Department of Housing and Urban Development (HUD) are jointly responsible for enforcing the FHA, as amended by the FHAA.  A joint statement issued by these agencies on May 17, 2004 titled *Reasonable Accommodations under the Fair Housing Act* ("Joint Statement") describes the meaning of relevant terms. It specifies that a "physical or mental impairment" as defined by the FHA "includes, but is not limited to, such diseases as ... emotional illness." Joint Statement at 3. It further notes that the term "substantially limits" indicates "that the limitation is 'significant' or 'to a large degree'" and the term "major life activity" means "those activities that are of central importance to daily life, such as seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, and speaking." Joint Statement at 4.

The uncontested record shows that Plaintiff has a mental disability that substantially impairs her major life activities. Plaintiff's psychiatrist Dr. Friedman diagnosed her as "temporarily totally disabled and suffering from Adjustment Disorder with Mixed Emotional Features, Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, and Insomnia due to Adjustment Disorder with Mixed Emotional Features." (Friedman Decl. ¶ 7.) As a licensed physician and surgeon with "expert[ise] in diagnosing and treating anxiety and depression" and a Dimplomate of the American Board of Psychiatry and Neurology, Dr.

---

[2] The court uses the now preferred term "disability" in place of "handicap" elsewhere in this Order.

Friedman appears to have the specialized knowledge necessary to provide expert testimony on this matter. (Id. at ¶ 1-6; Friedman Letter.); Fed. R. Evid. Rule 702.  Plaintiff asserts that her condition inhibits her ability to take care of herself, get out of bed, interact with others and remain focused. (Smith Decl.  ¶ 3.)

Defendants have pointed to no evidence controverting Dr. Friedman's diagnosis or Plaintiff's assertions.  Nor is there indication in the record that Defendants sought to take Dr. Friedman's deposition.[3]

**(b) Defendant knew or should have known of Plaintiff's disability**

The undisputed facts show that defendants knew, or should have known, of Plaintiff's disability. As stated above, Plaintiff sent a letter to Defendants on July 12, 2012 requesting an exception to the no-pet rule as an accommodation for her mental disability. In this letter, Plaintiff informed Defendant that she was attending "mental therapy" and that her companion dog Layla "has been deemed to be [her] emotional support... by [her] doctor." (Smith Decl. ¶ 17, Ex. H.)

Plaintiff attached a letter from Dr. Friedman stating that he was treating Plaintiff and that she suffers from "a severe Adjustment Disorder, Pain Disorder as well as Insomnia." (Smith Decl., Ex. H.) Defendants acknowledged receipt and responded to

---

[3] Dr. Friedman's declaration was presented with Plaintiff's Reply after Defendants objected that Plaintiff's claim of disability was based solely on Plaintiff's own declaration and the Dr. Friedman's letter and that no foundation was laid for the latter's expertise. (Dfdts.' Opp. at 4.) However, following the submission of Dr. Friedman's declaration, Defendants made no request for a sur-reply, nor did they make any request in open court for additional time to supplement the record. The court therefore will consider Dr. Friedman's declaration for the purposes of the instant motion.

10

1   Plaintiff's communication, denying the request and issuing a 3-Day

2   eviction notice.  Additionally, Defendant Selma Powdrill admits

3   that she spoke by telephone on July 24, 2012 with Gabriela Garcia

4   of the Housing Rights Center who informed her of Plaintiff's mental

5   disability and requested an accommodation for her.  (Zelma Powdrill

6   Dep. at 56:6-24; )

7       Defendants assert that, despite these communications, they did

8   not believe that Plaintiff was truly mentally disabled. (Dfdts.'

9   Opp. at 5.) To justify this skepticism, Defendants note that

10  Plaintiff spent substantial time cleaning the Subject Property to

11  ready it for her to live in.  However, while Defendants' assertions

12  may go to whether Plaintiff was physically disabled, Defendants do

13  not explain how her assistance in cleaning the apartment

14  contradicts her diagnosis of mental disability, since Plaintiff

15  does not assert that her mental disability renders her incapable of

16  carrying out any productive activity.

17      Moreover, it is undisputed that Defendants failed to ask

18  Plaintiff for further documentation or engage an "interactive

19  process" to assuage any doubts they harbored about her mental

20  disability.  "If a landlord is skeptical of a tenant's alleged

21  disability or the landlord's ability to provide an accommodation,

22  it is incumbent upon the landlord to request documentation or open

23  a dialogue." Jankowski Lee & Associates v. Cisneros, 91 F.3d 891,

24  895 (7th Cir. 1996). See also Rodiriquez v. Morgan, 2012 WL 253867

25  *9(C.D. Cal. Jan. 26, 2012) (holding that, after being appraised of

26  plaintiff's disabilities, "if Defendant had any questions regarding

27  the full nature and scope of Plaintiff's disabilities ... he should

28  have opened a dialogue with her and/or her representative"); Book

v. Hunter, 2013 WL 1193865 *4 (D. Or. Mar. 21, 2013) ("The
defendants may have believed that the plaintiff was not truly
disabled or that her request for accommodation was unreasonable.
However, under the FHAA they were required to engage in an
interactive process to determine whether or not that was the
case.")

Defendants further argue that the letter Plaintiff submitted
to Defendants did not state that Plaintiff was "disabled." (Dfdts.'
Opp. at 5.) However, defendants cite no authority to support their
assertion that Plaintiff was required to use term "disabled" in
order to effectively notify them of her disability.

Thus, on the undisputed facts, Plaintiff has shown that
Defendants knew or should have known of Plaintiff's disability.

**(c) Accommodation was necessary for Plaintiff to fully use and
enjoy the unit**

The undisputed facts show that Plaintiff's requested
accommodation was necessary for Plaintiff to fully use and enjoy
the unit. See Giebler, 343 F.3d 1143. An accommodation is necessary
if there is evidence "showing that the desired accommodation will
affirmatively enhance a disabled plaintiff's quality of life by
ameliorating the effects of the disability."
Dadian v. Vill. of Wilmette, 269 F.3d 831, 838 (7th Cir. 2001)
(internal citation and quotation marks omitted). Courts in this
Circuit have held that exceptions to no-pet rules may be required
as accommodation in the case of untrained companion animals that
provide emotional support to individuals with mental disabilities.
See Book v. Hunter, 2013 WL 1193865 (D. Or. Mar. 21, 2013) (finding
that landlord violated the FHA by failing to provide an exception

1  to a no-pet policy for an individual suffering from anxiety,

2  depression, and fibromyalgia who sought to live with an emotional

3  companion animal); Ass'n of Apartment Owners of Liliuokalani

4  Gardens at Waikiki v. Taylor, 892 F. Supp. 2d 1268, 1288 (D. Haw.

5  2012) ("Whether [a particular animal] qualifies as an 'assistance

6  animal' or 'reasonable accommodation' will depend largely on the

7  determination of [the plaintiff's] disability and the accommodation

8  necessary to ameliorate the effects of the disability.")

9      Here, as discussed above, Plaintiff suffers from depression,

10  anxiety, and insomnia that impair her ability to engage in daily

11  functions, including taking care of herself, getting out of bed,

12  and interacting with others. According to Plaintiff, the companion

13  dog, Layla, alleviates these symptoms by motivating her to maintain

14  a regular routine, get out of bed, clean, maintain relationships

15  with others, and exercise. Paintiff's psychiatrist stated in a

16  letter dated July 5, 2012 that "[d]ue to Ms. Smith's psychiatric

17  condition, having a companion animal would be ... necessary for her

18  continued stabilization." (Smith Decl., Ex. H.) Defendants have not

19  substantively contested this evidence. Accordingly, there is no

20  triable issue as to whether the requested accommodation was

21  necessary.

22  **(d) Defendant failed to provide Plaintiff with a reasonable**

23  **accommodation**

24      Defendants do not contest that they refused Plaintiff's

25  request for an exception to the no-pet rule as an accommodation for

26  her disability. Indeed, it is undisputed that on July 16, 2012

27  Defendants responded to Plaintiffs July 12, 2012 request to live

28  with her dog by issuing her a 3-Day Notice to Perform Conditions or

Covenants or Quit, requiring that she remove the dog or vacate the premises. Defendant Zelma Powdrill subsequently told an HRC representative on July 24, 2012 that she would not allow Plaintiff to keep the companion dog and that she wanted Plaintiff out of the unit.

Nor do Defendants present sufficient evidence to create a triable issue as to whether the requested accommodation was reasonable. "Ordinarily, an accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." Giebeler, 343 F.3d at 1157 (internal citations and question marks omitted). "[T]he history of the FHAA clearly establishes that Congress anticipated that landlords would have to shoulder certain costs involved, so long as they are not unduly burdensome." United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416 (9th Cir. 1994).

Here, Defendants argue that they denied the accommodation in part because of "potential extra costs" in cleaning the unit after Plaintiff moved out. (Dfdts.' MSJ at 2.)  However, the facts here do not indicate that such costs would be unduly burdensome. Defendants do not contest that the dog in question is a 10-pound terrier that is "well trained, doesn't bark, [and is] completely house broken."  (Smith Decl. ¶ 19, Ex. H.) Moreover, at the time Defendants issued Plaintiff the 3-Day Notice, they had accepted a security deposit of $850.00 from Plaintiff.

If Defendants felt that the accommodation imposed unreasonable costs, they were required to engage in an "interactive process" with Plaintiff to explore alternatives.  See Jankowski, 91 F.3d at

14

895; Rodiriguez, 2012 WL 253867 at *9; Book, 2013 WL 1193865 at *4;
Joint Statement at 7. Such a process could have resulted, for
example, in agreement on a larger security deposit. Defendants
engaged in no such process and have provided no evidence that the
requested accommodation imposed unreasonable costs. While a
landlord might not be required to accommodate all dogs, the facts
in the present case do not present a triable fact as to whether the
accommodation at issue here was unduly burdensome.

Additionally, defendants argue that their actions do not
violate the FHAA because they did not take further legal action to
evict Plaintiff after issuing her the 3-Day Notice. (Dfdts.' Opp.
at 6.) Defendants argue that "Plaintiff was given exactly what she
requested" because "Plaintiff was permitted to reside at the
Subject Property with her dog until she moved out" voluntarily.
(Pltf.'s Opp. at 6-7.)

Defendants' argument relies exclusively on Congdon v. Strine,
854 F. Supp 355 (E.D. Pa 1994), a case that is distinguishable from
the present one.  In Congdon, a mostly wheelchair-bound plaintiff
alleged violations of the FHAA on the ground that her landlord's
elevator maintenance policies failed to take account of her
disability and that the landlord's decision to not renew her lease
was made in retaliation for filing complaints about the elevator's
condition with governmental agencies. Id. at 357-58. Partly on the
ground that defendants did not take further action to evict the
plaintiff, the court held that the landlord's announcement that it
would not renew her month-to-month tenancy did not fall within the
"otherwise making a dwelling unavailable to a renter" language of
42 U.S.C. § 3604(f)(1). See 854 F. Supp 355.

1    _Congdon_ is distinguishable for at least two reasons. First,

2    Plaintiff's claim deals with a different prong of 42 U.S.C. § 3604,

3    subsection(f)(3), which prohibits landlords from "refusing to make

4    a reasonable accommodation" to a person with a disability. Unlike

5    in _Congdon_, the facts here clearly demonstrate that Defendants

6    refused Plaintiff's request for an accommodation. Though the

7    refusal was accompanied by a 3-day notice of eviction, the refusal

8    alone would have been violative of § 3604(f)(3)(B). Second, the

9    _Congdon_ court based its finding that the defendants did not make

10   the dwelling "unavailable" in part on the fact that

11       Strine and his agents made offers to rent other apartments to

12       the Congdons, including an offer to rent her an apartment in

13       the same building on the first floor. Indeed, Strine never

14       denied housing to the Congdons. To the contrary, Strine

15       undisputedly offered the Congdons alternatives, albeit not to

16       their taste.

17   _Id._ at 359 (citations to the record omitted). Unlike the facts in

18   _Congdon_, Defendants in the present case did not offer alternatives

19   or engage in any dialogue with Plaintiff as to her request for an

20   accommodation.  They instead responded to Plaintiff's request by

21   issuing her a 3-Day Notice, a position Defendants reinforced

22   several weeks later when they told Plaintiff's advocate, HRC, that

23   they wanted Plaintiff out of the apartment.

24       Defendants also argue that their "[a]cceptance of rent to

25   cover a period after the termination of a 3-day Notice waive[ed]

26   Plaintiffs' prior breach, making the 3-Day Notice moot." (Dfdts.'

27   Reply at 2, citing EDC Associates, Ltd. V. Gutierrez, 153 Cal. App.

28   3d 167, 170-71 (1984); Kern Sunset Oil Co. V. Good Roads Oil Co.,

214 Cal. 435, 440 (1931); Salton Community Services Dist. V.
Southard, 256 Cal. App. 2d, 526, 530 (1967).) However, even
accepting Defendants' assertion as true, the Defendants' receipt of
rent would only have worked to prevent Defendants from lawfully
evicting Plaintiff on the basis of Plaintiff's breach of the no-pet
policy prior to the date rent was accepted. It would not have
prevented Defendants from pursuing an unlawful detainer action
against Plaintiff going forward, and, it appears, Plaintiff
continued to fear such action. See, e.g. Kern Sunset Oil Co., 214
Cal. at 440-41 ("[I]f the landlord accepts rent from his tenant
after full notice or knowledge of a breach of a covenant or
condition in his lease for which a forfeiture might have been
demanded, this constitutes a waiver of forfeiture which cannot
afterward be asserted for that particular breach or any other
breach which occurred prior to the acceptance of the rent.") Nor
does acceptance of rent demonstrate agreement to provide the
accommodation requested, particularly given Defendants' obligation
to engage in an interactive process with Plaintiff relative to her
reasonable accommodation request. See, supra, Section 3(A)(1)(b).
The failure to engage with Plaintiff as to her requested
accommodation is particularly noteworthy in light of Plaintiff's
lawsuit, which was filed July 25, 2012, the day after Defendant
Zelma Powdrill reinforced Defendants' position that they would not
make an exception to the no-pet policy and wanted Plaintiff out of
the apartment. (See Zelma Powdrill Dep. at 56:6-24.)  Finally,
acceptance of rent would not nullify Plaintiff's asserted emotional
damages during the period leading up to Defendants' receipt of the
rent.

1    **2.  Defendants' Conduct Made Unit "Unavailable"**

2         The court next considers Plaintiff's claim that defendants

3    unlawfully made the unit "unavailable" to her or denied the unit to

4    her because of her disability. 42 U.S.C. § 3604(f)(1)(A) makes it

5    unlawful to "discriminate in the sale or rental, or to otherwise

6    make unavailable or deny, a dwelling to any buyer or renter because

7    of a [disability] ... of that buyer or renter." The phrase

8    "otherwise make unavailable or deny," as one district court has

9    noted, "appears to be as broad as Congress could have made it" and

10   encompasses such conduct as "the imposition of more burdensome

11   application procedures, of delaying tactics, and of various forms

12   of discouragement by resident managers and rental agents." United

13   States v. Youritan Const. Co., 370 F. Supp. 643, 648 (N.D. Cal.

14   1973) (construing parallel language in 42 U.S.C. § 3604(a)).

15        In the present case, Defendants' issuance of a 3-Day Notice in

16   response to Plaintiff's request for an accommodation for her

17   disability, in combination with Defendants' other communications,

18   had the effect of making Plaintiff choose between living in the

19   apartment and having access to a medically necessary companion

20   animal. These actions constituted "mak[ing] unavailable or

21   deny[ing" the apartment unit to Plaintiff under § 3604(f)(1)(A).

22        Defendants challenge to this claim relies exclusively on

23   Congdon v. Strine (discussed in the immediately preceding section).

24   (See Dfdts.' Opp. at 6.) Congdon offers greater support for

25   Defendants with respect to this claim than it does with respect to

26   the reasonable accommodation claim discussed supra in Section

27   III(A)(1) because the portion of Congdon relied upon by Defendants

28   does address § 3604(f)(1)(A). However, the court finds that Congdon

18

1    is nonetheless fundamentally distinguishable on the facts because,

2    unlike the current case, the defendant in Congdon sought to ensure

3    that the a dwelling was made available to the plaintiffs by

4    offering them alternative housing options. See 854 F. Supp 355 at

5    359. Defendants made no similar efforts here.

6

7    **3.  Defendants' conduct Interfered with Plainitff's Exercise and**

8    **Enjoyment of FHAA rights.**

9         The court next considers Plaintiff's claim under 42 U.S.C. §

10   3617. This statute provides that "[i]t shall be unlawful to coerce,

11   intimidate, threaten, or interfere with any person in the exercise

12   or enjoyment of, or on account of his having exercised or enjoyed,

13   or on account of his having aided or encouraged any other person in

14   the exercise or enjoyment of, any right granted or protected by

15   section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

16        "The Supreme Court has instructed that we are to treat '[t]he

17   language of the [FHA as] broad and inclusive.'" Walker v. City of

18   Lakewood, 272 F.3d 1114, 1129 (9th Cir. 2001) (quoting Trafficante

19   v. Metropolitan Life Ins. Co., 409 U.S. 205, 209 (1972).

20   "'[I]interference,'" in particular, 'has been broadly applied to

21   reach all practices which have the effect of interfering with the

22   exercise of rights under the federal fair housing laws.'" Id.

23   (quoting United States v. Hayward, 36 F.3d 832, 835 (9th

24   Cir.1994)). "Interference" has also been described as "the act of

25   meddling in or hampering an activity or process" (Id.)

26        The undisputed facts show that Defendants interfered with

27   Plaintiff's exercise of her right to obtain a reasonable

28   accommodation for her disabilities under the FAHA, FEHA, and DPA.

By responding to Plaintiff's request for an accommodation for her disability by issuing her a 3-Day Notice, and subsequently reiterating that they wanted Plaintiff out of the apartment if she insisted on keeping the companion animal, Defendants engaged in conduct that would give a person in Plaintiff's position cause to hesitate in seeking to enforce her right to obtain a reasonable accommodation for her disabilities. In opposing this claim, Defendants again rely exclusively on Congdon in asserting that their conduct did not constitute interference. (Dfdts.' MSJ at 4.) But, as discussed, Congdon is distinguishable from the present case because of the efforts that the landlord defendants in Congdon made to provide alternative housing options to the plaintiff. See 854 F. Supp at 359. The lack of such engagement in the present case supports Plaintiff's claim that Defendants' issuance of the 3-Day Notice and other communications interfered with the exercise of Plaintiff's fair housing rights.

**B. Claim under California Fair Employment and Housing Act (FEHA)**

The FEHA prohibits, as unlawful discrimination, "a refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." Cal. Gov't Code S 12927(c)(1). The FEHA was written to "to conform California law on the subject of fair housing to the Federal Fair Housing Act." Broodmore San Clemente Homeowners' Assn. v. Nelson, 25 Cal. App. 4th 1, 5-7 (1994).

The elements to prove a "reasonable accommodation" claim under the FEHA are the same as those under the FHAA, as reviewed above. A

plaintiff must provide that she (1) suffers from a disability as defined in the FEHA,[4] (2) the discriminating party knew of, or should have known of, the disability, (3) accommodation is necessary to afford an equal opportunity to use and enjoy the dwelling, and (4) the discriminating party refused to make this accommodation.  Auburn Woods I Homeowners Ass'n v. Fair Employment & Hous. Comm'n, 121 Cal. App. 4th 1578, 1592(2004).

Because Plaintiff has established she is entitled to summary judgment as to each of these elements with respect to her FHAA reasonable accommodation claim, she is also entitled to summary judgment as to her FEHA reasonable accommodation claim.

**C. California Disabled Persons Act (DPA)**

The DPA provides that "[a]ny person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." Cal. Civ. Code § 54.1(3)(A). This language closely parallels the language defining a "reasonable accommodation" claim

---

[4] Disability under the FEHA encompasses "mental disability" which are defined as "any mental or psychological disorder or condition, such as intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity." Cal. Gov't Code § 12926(j)(1). This definition is at least as encompassing of Plaintiff's mental disabilities as the definition of "disability" under the FHAA, as defined in 42 U.S.C. § 3602(h)(1)-(3)and interpreted by HUD and DOJ. See, supra, Section III(A)(1)(a).

1  under the FEHA. <u>See</u> Cal. Gov't Code § 12927(c)(1). In light of
2  these similarities, this court finds, as another court in this
3  district recently did, that the same four elements under the FEHA
4  criteria can establish a refusal to provide reasonable
5  accommodation claim for the DPA. <u>See</u> <u>Rodriguez v. Morgan</u>, 2012 WL
6  253867 at *5 (C.D. Cal. Jan. 26, 2012).

7       As Plaintiff has established she is entitled to summary
8  judgment as to her FEHA reasonable accommodation claim, she is
9  likewise entitled to summary judgment as to her DPA reasonable
10 accommodations claim.

11

12 **D. California Unruh Civil Rights Act (Unruh)**

13      Plaintiff asserts a claim under the Unruh Civil Rights Act,
14 Cal. Civ. Code § 51. This statute provides that "[a]ll persons
15 within the jurisdiction of this state are free and equal, and no
16 matter what their sex, race, color, religion, ancestry, national
17 origin, disability, medical condition, genetic information, marital
18 status, or sexual orientation are entitled to the full and equal
19 accommodations, advantages, facilities, privileges, or services in
20 all business establishments of every kind whatsoever." <u>Id.</u>
21 Prevailing plaintiffs may recover actual damages or automatic
22 minimum statutory damages in the amount of $4,000, as well as
23 attorneys fees. Cal. Civ. Code § 52. Plaintiff asserts that
24 Defendants' denial of a reasonable accommodation for her
25 disabilities violates the Unruh Act. (Pltf.'s MSJ at 18.)

26      Defendants challenge the Unruh claim on the grounds that
27 Plaintiff has not proved intentional discrimination. (Dfdts.' Opp.
28 at 10.) However, a preliminary question, not raised by Defendants,

1   is whether Plaintiff's reasonable accommodation claim may be

2   brought under the Unruh Act. The issue is whether the Unruh Act

3   requires residential landlords to provide reasonable accommodations

4   for disabled tenants. In agreement with the analysis of Judge Wu in

5   Rodriguez v. Morgan, 2012 WL 253867 (C.D. Cal. Jan. 26, 2012), the

6   court finds that it does not.

7        The Unruh Act does not specifically include a requirement for

8   the provision of reasonable accommodations. This makes it distinct

9   from the federal FHA and California's FEHA and DPA, as discussed,

10  respectively, in Sections III(A)(1), III(B), and III(C). The Unruh

11  Act does include a provision providing that "[a] violation of the

12  right of any individual under the federal Americans with

13  Disabilities Act [ADA] of 1990 shall also constitute a violation of

14  this section." Cal. Civ. Code § 51(f). The ADA, in turn, includes a

15  reasonable accommodations requirement as a component of its ban on

16  discrimination in "public accommodations." See 42 U.S.C. § 12182

17  and § 12182(b)(2)(A)(ii) (defining discrimination to include a

18  failure to make reasonable accommodations for individuals with

19  disabilities). However, the ADA's reasonable accommodations

20  requirement does not extend to residential housing.  See 42 U.S.C.

21  § 12181(7) (defining "public accommodations" to include "an inn,

22  hotel, motel, or other place of lodging ...."; Independent Hous.

23  Servs. v. Fillmore Ctr. Assocs., 840 F.Supp. 1328, 1344 n. 14

24  (N.D.Cal.1993) (statutory history of ADA indicates lack of intent

25  to extend reasonable accommodations requirement to residential

26  housing).

27        Plaintiff accurately asserts that the Unruh Act, unlike the

28  ADA, does apply to residential housing.  See Marina Point v.

23

1  _Wolfson_, 30. Cal 3d 721, 731 (1982) ("For nearly two decades the

2  provisions of the Unruh Act, in light of its broad application to

3  'all business establishments,' has been held to apply with full

4  force to the business of renting housing accommodations.") However,

5  it does not follow from this fact that the California legislature

6  intended to expand the ADA's reasonable accommodations requirement

7  beyond the requirement's scope under the ADA itself (as

8  California's legislature did by including a reasonable

9  accommodations requirement that is applicable to residential

10 housing in the FEHA and DPA, discussed _supra_ in Sections III(B) and

11 III(C)), and the court has seen no authority indicating that the

12 legislature had such an intention.

13      In sum, the court agrees with Judge Wu's analysis in _Rodriguez_

14 _v. Morgan_ and finds that Plaintiff's claim under the Unruh Act must

15 be dismissed.

16

17 **E.   Claim for Negligence**

18      The court finds it unnecessary for the resolution of this

19 matter to reach Plaintiff's negligence claims.

20

21 **IV  Conclusion**

22      For the reasons set forth herein, the court GRANTS Plaintiff's

23 motion for summary judgement and DENIES Defendants' motion for

24 summary judgment as to liability for Plaintiff's claims under the

25 Fair Housing Amendments Act, the California Fair Employment and

26 Housing Act, and the California Disabled Persons Act. The court

27 GRANTS Defendants' motion for summary judgement and DENIES

28

Plaintiff's motion for summary judgment as to Plaintiff's claim under the Unruh Civil Rights Act.[5]

IT IS SO ORDERED.


Dated: October 28, 2013

DEAN D. PREGERSON

United States District Judge

---

[5] The court notes that, in light of the present order, it need not address Plaintiff's recently filed motions in limine. (See DKT Nos. 40, 41.)